cases. The first case is United States of America v. Shaheen Jenkins. Good morning, counsel. Good morning, Your Honor. My name is David McColgan. I'm the attorney arguing on behalf of appellate training Jenkins. This case, of course, involves a seizure and a frisk of Mr Jenkins while he was sitting in a parking lot in a car. The cocaine that was seized during that frisk should have been suppressed for two reasons. One, because there was no... Well, it wasn't it wasn't seized during the frisk, was it? It was located during the frisk, Your Honor. Well, cocaine wasn't... an object was located during the frisk. Something that was known to be contraband, according to Hoffman's testimony, and he suspected that it was narcotics. That's correct. And the other thing is that the prosecution argues that it wasn't actually seized until later, but that's of no moment in terms of the issue here. The point is that it was located during a search, during a frisk, and the only reason it wasn't seized at that point was because it required a strict search, and they didn't want to do that in a motel parking lot. I thought the reason it wasn't seized was because Mr. Jenkins hit the officer and ran away. But it still wouldn't have been seized. then and there since it required the stripping. Exactly. It is true that after the search, after it was located, Mr. Jenkins struck Hoffman, and he struggled, he tried to run away, but as the agents testified, they didn't want to seize it at that moment because it would have required a strict search. When in your view did the stop take place? Your point is that every stop took place after the agents first locked the car in with their own car, second approached on either side, and then significantly with Hoffman on the passenger side next to Jenkins, started speaking to Jenkins and asked him to step outside and submit to a pat-down search. According to the district court, at that point, no reasonable person would have been felt guilty. At the point where Jenkins is asked to leave the car. Yes, your honor. So the government makes much, and I think you do too, in your brief of the so-called aggregate knowledge doctrine. Yes. But why does that even matter? At the time that Jenkins is asked to leave the car, that's when the stop takes place. That's correct. Certainly at that point, neither of them has that information. That's correct. But they did have information that a load was expected, but they had no information to tie the load that was expected to these particular cars. That's correct. And the information they had about a stop that had taken place three days earlier, and actually that was information that agent, that Detective Merchant had, that was 90 miles away. That was in a different part of Vermont, so it's not even clear how that would have been relevant to Agent Hoffman. Do you argue that even Officer Merchant didn't have the knowledge to support the terrorist stop? I think it's obviously a more difficult case, but I would argue that even with Merchant's information added in, even assuming the court can do that, that there's still insufficient basis for a terrorist stop. Because certainly at that point, as your honor has pointed out, they haven't linked the confidential informant information that Merchant had to that particular car. What about the fact that this Motel 6 was under surveillance for drug deals? That's correct, your honor. And certainly the police had information that there were drug deals taking place there. But still, even that information, combined with what the officers observed, was not reasonable suspicion. Because what they observed is fairly typical of what you see in a motel parking lot, which is people driving up, parking, going in, checking out availability and room rates. It's just not enough for a Terry-level seizure at that point. Even if we were to assume that it was enough, going to the next Terry step in the analysis, which is whether or not there was a particularized basis for the frisk, there certainly wasn't a particularized basis. Because there has to have been some basis for believing that Mr. Jenkins was armed and dangerous. And we don't have that here. What we have, and what the district court relied on only, was his conclusion that there was a reasonable basis to think that there was drug dealing going on. Nothing more. And in this court's cases that have dealt with frisks, the court has always looked to there being something more. Perhaps a suspicious bulge, or refusal to remove hands from the pockets, or nervousness, something like that. This court has never adopted a per se rule that reasonable suspicion of drug dealing is enough for a frisk. And that's essentially what the government is advocating here. A per se rule that once you think there's reasonable suspicion of a drug deal going on, that's enough for a frisk. This court has never gone that far. You acknowledge, wouldn't you, that an observation that an individual who had been stopped seemed nervous is not a whole lot farther than being stopped for just a drug offense. That kind of observation is very subjective and probably could be said about most people who are stopped. So haven't we already kind of established a per se rule with regard to stops in connection with drug offenses? I don't think so, Your Honor. I think that nervousness, I agree it is subjective, and I agree it's not a whole lot more, but it is something more than just suspicion of drug dealing. And nervousness could give rise to a fear on the part of the police that, well, drug dealer, now he's acting nervousness, perhaps that would give rise to a reasonable belief that he's armed and dangerous. At least that's something more. We don't have that here. When did the frisk take place in temporal relation to the learning of the name of Mr. Jenkins? It took place at the very beginning of the frisk. It was after Mr. Jenkins was out of the car. He was just starting to be frisked, and at that point, Merchant, who's on the other side, asked him, what's your name? And Jenkins says, Shaheen. And Merchant says, Shaheen Jenkins? And Jenkins looks surprised. And then comes the nickname, yeah. Blue. Yeah. So it's right at the beginning of the frisk. Did that add anything to the suspicion that Jenkins might be armed? Was there any indication that the people who Merchant had heard about were armed? Absolutely no indication whatsoever, and I think that's significant as well. The information Merchant had from the confidential informant about these two people, V and Blue, drug dealing, but no mention of arms. The stop down in Hartford, Vermont, there was a search of the car, there was no drugs, and there was no guns. So in that sense, it adds nothing. Before you sit down, could you address attenuation, please, and the effect that Mr. Jenkins striking Hoffman attenuated any taint of any illegal frisk? Why that doesn't change the whole scenario for analyzing the question of the suppressibility of the evidence. Yes, Your Honor. The attenuation doctrine doesn't apply here. The government relies strongly on the recent Strafe opinion. But there, what you had was the intervening circumstance followed by the search. The intervening circumstance was the discovery of the valid arrest warrant, and then there was a search incident to the arrest. Here, we have the opposite. We have the search taking place before the alleged intervening circumstance. The search is the frisk, the discovery of the suspected narcotics, and then the search takes place, and then the alleged intervening circumstances after that. So by definition — If we disagree with you, though, about exactly when the search took place, whether it was the discovery of the object versus actually finding the drugs later on, because there were other traces discovered after he was arrested and there was a search incident to that arrest. So one could say that his striking of Officer Hoffman and the events that followed were divorced from what had happened earlier in terms of the initial stop and frisk. Except that everything that follows from the frisk is following from the discovery of that object. The striking of Jenkins and the later putting him in the car so he can later be taken down in strip search, all of that follows from that initial discovery of the contraband. You would say his own act of striking Hoffman has no bearing on our analysis at all? None whatsoever, because the contraband was found before the alleged intervening circumstance. So by definition, it's not an intervening circumstance. Counsel, the case that says that the Court has not gone so far as to eliminate the second Terry issue in drug cases dates from 1987. Is there a more recent case that again says that drug cases alone do not treat the defendant as armed and dangerous? Not that I'm aware of, Your Honor. What we have instead is a string of cases from this circuit which have always looked for something additional. Nervousness, right? Nervousness, bulge, something of that sort. So it has to be drug transactions plus. Exactly. And here there was no plus. Exactly, there was no plus. Even if we add in merchant's information, there was no plus. Thank you, Counsel. You're reserved two minutes for rebuttal. Thank you, Your Honor. Good morning. May it please the Court. My name is Jonathan Alfred. I represent the United States in this matter. I believe that first, Judge Lynch, there were some points that you were making that go straight to the issue of allaying some confusion. When the stop occurred and the collective knowledge doctrine. I believe that the district court was proper in its factual determinations. There's a bit of a small dispute regarding whether the facts were clearly erroneous. And if you look at them through the lens of both officers jointly deciding to make the stop, there's no question that the factual decisions of the district court were appropriate. And it was a collective action to do the stop. Well, okay, but what does Merchant know that's any more than Hoffman knows at the time that they pull up their car behind and approach and get Jenkins out of the car? I agree that I think it's maybe a distinction without a difference regarding collective knowledge. But if we're attacking the factual findings of the district court, I don't believe that this court could say they were clearly erroneous. Well, what is the factual finding that's in question? What I'm trying to understand is at the time that Jenkins is removed from the car, you agree that a stop has taken place at that point, right? Yes, sir. I believe it actually is before he's asked to get out of the car. Even before. All right. So at that point, Merchant does not know who Jenkins is. They haven't asked for his name. Correct. Are you saying that if you see some possibly suspicious activity that, for the sake of this argument, we'll say is not enough in itself to justify a stop, and anyone in the state has ever been accused of drug dealing or an informant has ever told you that coming to this city is a shipment of drugs, that there's reason to stop these people on the theory that they might be those folks who are coming to the state with drugs? No, I would not agree with that. That's not the extent of the knowledge. So what is it that the informant and the prior car stop add to the basic facts of what both officers observed in the parking lot? Agent Hoffman is aware of nearly all of the information gleaned from the stop itself on I-89, that there's an inbound load of the names of the people who were involved and the length of time that had passed since that stop. The size of the load was not necessarily known to him, just that there was a load. I do believe that it is largely a red herring, the collective knowledge doctrine, but the knowledge that there was a load coming in combined with what's observed at the hotel, specifically the locally plated vehicles, the rendezvous of two vehicles. Well, that's just the point. They're locally plated vehicles. The car that was stopped was a New York car, wasn't it? But the knowledge from the officers of how drug operations happen in Burlington is that they meet up with locals who then rent a hotel. But I'm just trying to figure out, you know, they were there looking for other people, as I understand it, who they had some information were going to do some kind of drug deal in that place. Lots of people, we're told, did drug deals in that place. So why would anyone think, if they saw someone coming into the parking lot, that they were, you know, it seems to me it's one thing to argue that in that location that's suspicious already, but I just don't understand what links drug activity, possible drug activity, people driving around in suspicious ways with informant information that there's going to be a drug load coming to that city. I mean, Vermont is a small state. It's not that small that anybody that, you know, these must be the guys because we have no drug dealers here except the people who are driving in from New York. If that was the case, I'd be largely without a job. I understand. I only brought it up to highlight that I don't think that the factual dispute is really important, that there is a basis in the record to find that there is a collective knowledge at the time to stop. Whether it's relevant is a separate issue. I think it is relevant to the question of frisk because there was observation of Mr. Jenkins that is akin to nervousness. There was this shock at being identified by a law enforcement officer by name and nickname. Agent Hoffman views that reaction. And in the reply brief from the- That's the plus you're arguing? I believe it is a plus. I think it's probably more important than simple nervousness, which, as Judge Carney points out, is something that is akin in most traffic instances. But being identified by a narcotics officer by name and nickname and showing a visible reaction of deer-in-the-headlights look, according to the officer's testimony, is a factor that I do believe is important. And what the collective knowledge doctrine comes in at this stage, because the case cited in Brown, the Tenth Circuit case, it cherry-picks a concept from Tenth Circuit doctrine and discusses vertical- the Tenth Circuit has a vertical and horizontal approach to collective knowledge. And so the horizontal approach in the Tenth Circuit is akin to Cologne, that officers who work together in a stop situation can rely on implicit, unspoken actions of their partners that they're with every day. And when Officer Merchant identifies the individual by nickname with a clear showing of shock, a name he knows from a prior traffic stop involving a potential load of drugs, there's an implicit communication going on between partners that I think is important in the analysis. So I don't think this Court needs to go down the road and find that, simply because drug dealing was occurring, that there must be reasonable suspicion to find a gun. Talk about the frisk. What supports the frisk? Well, the frisk is that identification of an individual who is bringing a load from out-of-state, potentially. And a load of narcotics- Are you saying the same information that supports the Terry stop also supports the second prong of the Terry stop? That same information, plus the reaction and positive identification of the individual. I believe it was you, Judge Pulliver, asked about the temporal proximity of when the identification happened and the frisk began. The District Court does not find that it began at the time of the path death. It said it began prior to the frisk is when that identification occurred. So Agent Hoffman has seen, and it would make sense that it did, because Agent Hoffman sees the facial reaction of the defendant. How could he be down at his ankles starting the frisk coming up and see the facial reaction of the defendant? So that reaction, I think, and the identification by name of an individual associated with a load of drugs is different than simple hand-to-hand drug transactions on the street. An individual with a load of narcotics coming from out-of-state is substantially more likely to be armed than an individual who is doing a hand-to-hand on a street corner. And I think that this court can rely on that fact as an additional basis. Are you saying that our court has said that drug dealing per se is enough to meet the second prong, armed and dangerous? No, ma'am, I'm not saying that. I'm saying that the type of drug dealing is still a factor. An individual who is simply engaged in small-time transactions of one bundle of heroin, 10 small bags of heroin, is different than an individual bringing a load of drugs up from New York City to then engage in a number of transactions. The larger the amount of drugs, the greater the likelihood of needing a weapon to protect that amount of drugs. Is that something we should just infer on our own, or is there anything in the record where the officers express any expert opinion that in their experience people who are driving from out-of-state with big loads of drugs are more likely to be armed? I think that the court could certainly infer that. We'd have to, right, because there is nothing in the record where either of the officers says that. I don't believe they do explicitly say that, but they do identify it as a load. Nor has this court ever said that drug dealing per se is enough to meet the second prong of Terry, armed and dangerous. No, but I think that an examination of the nature of the drug dealing is an important factor. Have we ever said that? Has our court ever said that? To examine the nature and circumstances of these suspected criminal conduct? Well, you're adding another semi-prong to the need for a frisk. No, it's a totality of the circumstances analysis, Judge. I think that it's simply what type of drug dealing is occurring should be a factor in determining it. If I could briefly address attenuation, which is really what I wanted to start with and got massively off track, so I apologize for that. I think that Streep really is the easiest answer to this issue that the court is facing. The temporal proximity is an issue that is not in the government's favor in this instance, but the presence of an intervening circumstance is substantial here, and the nature of that circumstance is important. The defendant himself created the circumstance. It was his action. It wasn't a third party, and it wasn't the officer's. It was a rather substantial additional criminal conduct. But your opponent would say that actually the discovery of the drugs took place before the defendant struck Agent Hoffman, and so that the whole attenuation and Streep argument is just irrelevant. Why is that wrong? Because the drugs themselves weren't discovered. It was simply an object that was known and needed further investigation, potentially a warrant, potentially some additional efforts to obtain. But at that instant, when he struck, there's probable cause to arrest, and there's never even a doubt as to, by the time he gets to the station, there's white powder all over the back of the car. I mean, at that point, probable cause to do a search for crack cocaine is overwhelming, even without the observation of the— Put another way, if Jenkins had gone quietly, he would have a much better argument. If the officers had arrested him, taken him downtown on the strength of having found a hard object in this frisk, and then they later conduct whatever search is necessary to identify the object, then he would have the argument, which you disagree with, that there was no reasonable suspicion justifying that stop and frisk. But that's not what happened. Correct. And that argument regarding stop and frisk I think comes into the third stage regarding the purpose and flagrancy of the official misconduct. Here we have a district court that has said that everything that happened was legal. It's hard to imagine that the officers would even be found negligent. Unlike the warrant scenario in Spryfe, and this case strikes me as even stronger, you could imagine officers stopping people at random on the theory that maybe they'll have a warrant. I wouldn't think that officers are stopping people at random in the hope that the person will hit them. I would agree, Judge. Thank you, Counsel. Thank you. Mr. McColgan, you have reserved two minutes for rebuttal. Yes, Your Honor. Thank you, Your Honor. On the attenuation argument, I'd like to draw the court's attention specifically to the testimony in the transcript on Joint Appendix 84, which is in the transcript from here on pages 109 to 110, where the officer is asked exactly what he thought he had found, and he says that there was some type of contraband on his person. Did you have suspicion as to what it was? Yes. What did you suspect? I suspected it to be some type of narcotic. Well, wait. Suppose Mr. Jenkins had gotten away after punching Hoffman, and then he's later apprehended. You're not suggesting that he could be successfully prosecuted because the officer said, I found a hard object in his pants for drugs, because the officer said, I found a hard object in his pants, and I suspected it was contraband, and if you push me on it, I'd say the contraband was drugs. That wouldn't get to prosecution anywhere, right? Well, certainly that's true, but the same could be true even after the contraband is seized down at the police station. If it's lost at that point, he can't be prosecuted because it hasn't been tested. If we carry this, the government's argument, to its logical conclusion, they don't know what they've seized until it's been tested several months later. And that's a matter of ---- But they haven't seized anything at the time that he assaults the officer and runs away. Well ---- They've identified a suspicious object. Well, they have seized ---- Wouldn't you have a pretty decent argument if they ---- Okay, so they find this object and they think, gee, we're not going to take his pants down in the public street, so we're going to take him to the station house. At that point, he's under arrest. Wouldn't you argue that? Yes. And is that based on probable cause, because there's an unidentified object in his pants? Wouldn't you be here arguing that that was not a good basis for an arrest because they don't know what that is? It could be anything? I think, you know, he suspects that it's narcotics. The description of it fits the description of crack cocaine. It's a hard, round object. It's located in a place where typically drugs ---- But typically you're not carrying innocent things. Yes. I mean, the exact location is between the scrotum and the anus. That is a very specific location that is known for body packing. So he has a very high suspicion, a very high probability of believing that that is narcotics. You don't carry anything else there. He clearly doesn't even think that it's a gun because they put him in the car. Right, without ---- Without taking what could be a gun. Of course it's not a gun. Of course it's not a weapon. They, at that point, strongly believe, and with good basis, I would say they have probable cause at that basis for the arrest. They have seized him. They haven't taken the drugs from him yet because they're going to do that at the station. But it's the same thing. They have seized him with the drugs. It makes no difference that they actually take the drugs from him at the station. That's a distinction without a difference. Accordingly, strafe doesn't apply here. I see my time is up. Thank you, counsel. Thank you both. Thank you, Your Honor.